UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  12-22982-CIV-MORENO

STANLEY EDOUARD,

      Plaintiff,

vs.

MILLER'S ALE HOUSE, INC.,

      Defendant.

_____/

### ORDER DENYING DEFENDAN'TS MOTION FOR SUMMARY JUDGMENT

Stanley Edouard initially sued the defendant, his former employer, for unpaid overtime compensation under the Fair Labor Standards Act (the "FLSA"); breach of contract; unjust enrichment/quantum meruit; and promissory estoppel. The parties stipulated to the dismissal of the non-FLSA claims. D.E. No. 14.  The defendant now moves for case-dispositive summary judgment on the grounds that Edouard is exempt from coverage under the FLSA because he was employed in a "bona fide executive, administrative or professional capacity." *See* 29 U.S.C. § 213(a)(1). The plaintiff, who worked as a service manager at one of the defendant's restaurants, claims he was misclassified by his former employer, and is not exempt due to the fact that some ninety percent of his actual duties were non-managerial.

### I. Factual Background

The defendant operates a chain of casual restaurants. Def. Facts at ¶ 1. On August 29, 2011 Edouard began work as a "service manager" at the defendant's Coral Gables, Florida location. Def. Facts at ¶ 17. There were four management positions at the Coral Gables location, including a

general manager, an assistant general manager, a kitchen manager, and a service manager. Def. Facts at ¶ 3. Edouard's annual salary of salary of $45,000 exceeded that of any non-managerial employee. Def. Facts at ¶¶ 18, 19-22. During the time he worked for the defendant, Edouard never received overtime wages. Pl. Facts at ¶ 1. Edouard was fired in February of 2012. Def. Facts at ¶ 64.

A Miller's Ale House manager's duties generally include supervising and instructing restaurant employees, including kitchen staff and waitstaff; handling customer complaints; managing inventory records; maintaining staff attendance records; maintaining daily business records at closing time; participation in community marketing events; and hiring and firing employees. *See generally* Def. Facts at ¶¶ 23-63. The plaintiff contends he rarely, if ever, performed these managerial duties and claims he spent some 90 percent of his time cooking, cleaning both the dining area and kitchen, and serving individual customers. *See generally* Pl. Facts at 3-12.

## II. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making its assessment of summary judgment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir.1990). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

-2-

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III. Analysis

*1. The Executive Exemption*

The Fair Labor Standards Act provides that, generally, employees are entitled to overtime compensation at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of 40 per workweek. *See* 29 U.S.C. § 207(a)(1). The FLSA exempts employees "employed in a bona fide executive, administrative of professional capacity" from the Act's overtime pay requirements. *See* 29 U.S.C. § 213(a)(1). This provision is often referred to as the "executive exemption." Such exemptions to the FLSA are to be narrowly construed. *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997); *see also A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). The employer has the burden of showing entitlement to an exemption. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995).

An employee is "employed in a bona fide executive capacity" if (1) he is compensated on a salary basis at a rate of at least $455 per week, (2) his primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, (3) he customarily and regularly directs the work of two or more other employees; and (4) he has the authority to hire and fire or his suggestions and recommendations as to the hiring, firing, advancement, promotion or other charge of status of other employees are given particular weight. *See* 29 C.F.R. § 541.100(a)(1)-(4).

This case turns on whether the plaintiff fell within the executive exemption to the FLSA, and was thus ineligible for overtime compensation under section 207. Here, there is no dispute as to whether the plaintiff meets the first criterion set out by the Department of Labor. *See* 29 C.F.R. § 541.100(a)(1). However, the plaintiff argues that the second, third and fourth do not apply to him, or, alternatively, that there are genuine issues of material fact precluding summary judgment.

A. *"Primary duty"*

To qualify for the executive exemption, an employee's "primary duty" must be the management[1] of the enterprise in which he or she is employed. 29 C.F.R. § 541.100(a)(2). The term "primary duty" means the principal, main, major or most important duty that the employee performs. 29 C.F.R. § 541.700(a). The determination of an employee's "primary duty" must be based on all the

---

[1]"Management" includes, but is not limited to, "activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102.

facts of a particular case, with the major emphasis on the character of the employee's job as a whole. *See id.*

> The defendant claims Edouard's primary duty was to manage the "front of the house."

> Plaintiff ensured that his subordinates did what they were supposed to do. He walked through the restaurant at the beginning of shifts to make sure the employees who were scheduled to work were present. Plaintiff ensured the restaurant was clean while making his rounds and that no employees were outside taking a "smoke break" while they should have been in the restaurant. He directed servers to pay attention to particular tables if he noticed they were ignoring them.

> Def. Reply at 4. Edouard disputes this characterization of his day-to-day duties, and claims

he spent the vast majority of his work day cooking, washing dishes, cleaning the restaurant, and

serving customers. Pl. Facts at ¶¶ 23, 24, 27, 31, 43 49, 54. He argues that these "back-of-the-house"

tasks were his primary duties because they occupied 90 percent of his time. The plaintiff's Statement

of Disputed Material Facts demonstrates a clear rift between Edouard and his former employer's

understanding of what his duties actually entailed. For example, what the defendant calls "making

rounds" to "ensure[ ] the restaurant was clean", the plaintiff characterizes as sweeping the trash,

cleaning the bathrooms or cleaning vomit." *Id.* at ¶ 27. Edouard claims that the duties outlined by

the defendant were handled by senior managerial staff, while he was relegated to "manual labor

duties" around the restaurant. *Id.* at ¶ 26.Edouard maintains that the "front-of-the-house" operation

was overseen, not by him, but by the defendant's other managers, each of whom had greater authority

than the plaintiff. *Id.* at 26.  The defendant, on the other hand, claims that Edouard was the lone

manager on the premises as often as three times per week. Def. Facts at ¶¶ 56-57.

### B. Direction of other employees

To qualify for the executive exemption, an employee must also "customarily and regularly"

direct the work of two or more other employees. 29 C.F.R. § 541.100(a)(3). The Department of Labor defines "customarily and regularly" as "a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701.

The defendant claims that the plaintiff directed the work of the restaurant staff by: (1) ensuring all employees were present during their scheduled shift times; (2) ensuring that employees were not taking unauthorized "smoke breaks"; (3) guiding servers and ensuring service and uniform standards were met; (4) observing whether servers were being attentive to customers; (5) encouraging servers to "up-sell" by encouraging diners to order more expensive menu items; (6) supervising hostesses; (7) organizing server schedules; (8) tracking server hours; (9) conducting weekly performance reviews with non-exempt staff; (10) setting up and tracking incentive "contests" for servers; (11) reminding line cooks about food safety issues; and (12) ensuring prompt customer service. *See* Def. Facts at ¶¶ 25-43.

Edouard disputes nearly every one of the defendant's assertions about his authority to direct employees. While the plaintiff admits that he walked around the restaurant to take attendance, Edouard states that the only action he was authorized to take in the event of an employee's absence was to notify the assistant general manager or general manager. Pl. Facts at ¶ 26. He denies that he ever resolved any issues relating to employee performance or absences. *Id.* at ¶ 28. He claims that he did not guide or instruct waitstaff, but was instead required to take over table service duties himself. *Id.* at ¶ 30. Edouard maintains that he did not comment on employee performance, or give warnings to employees. *See id* at ¶¶ 29, 32. The plaintiff claims that the only guidance he gave to

employees was limited and involved demonstrating safe cooking techniques while he worked in a line cook capacity. *See id*. at ¶¶ 11, 39. He denies being responsible for employee scheduling. *Id*. at ¶ 33. He claims that he maintained no records with respect to restaurant staff. *Id*. at 34.

### C. Authority to hire and fire

Finally, in order to qualify for the executive exemption, an employee must have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4).

The defendant maintains that Edouard had the authority to hire an employee over the objection of the general manager and to fire employees for certain offenses without a supervisor's approval. Def. Facts at ¶ 59. Edouard is alleged to have made recommendations to more senior managers with respect to employee discipline. *Id* at ¶ 63. Edouard disputes the defendant's contention that he had the authority to hire and fire, or that he was asked to provide feedback with respect to employee performance. *See* Def. Facts at ¶¶ 59-63. Although the plaintiff admits that, on at least one occasion, he recommended a former co-worker who was subsequently hired by the defendant, Edouard maintains that he was explicitly told that the general manager and assistant general manager were responsible for the advancement, disciplining or termination of employees. *See id*.

### IV. Conclusion

Viewing the evidence in the light most favorable to the plaintiff, there remains a genuine dispute as to what the plaintiff's day-to-day job activities actually entailed, and whether those duties were "primary" as defined by the Department of Labor. *See* 29 C.F.R. § 541.700(a)("Determination of an employee's primary duty must be based on all the facts in a particular case, with the major

emphasis on the character of the employee's job as a whole."). Where there is an unresolved question as to whether an employee's duties qualified him as an exempt employee under the FLSA's executive exemption, the question is best resolved by a jury, having considered all the evidence at trial. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008)(noting the necessarily fact-intensive nature of the executive exemption's primary duty inquiry). Accordingly, the Court finds that summary judgment is inappropriate at this stage; the defendant's Motion for Summary Judgment (D.E. No. 12) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 25 day of June, 2013.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record